**UNITED STATES of America, Appellee,**

v.

**Harold McMILLAN, Appellant.**

**No. 79–1308.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Sept. 26, 1979.

Thomas M. Kelly, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., U.S. Atty., John M. Lee, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

PER CURIAM.

Pursuant to 28 U.S.C. § 2255 Harold McMillan filed this motion to vacate judgment and sentence claiming that he was deprived of effective assistance of counsel at trial. After an evidentiary hearing, the district court[1] denied the motion and this appeal followed. We affirm.

In 1974, McMillan was convicted by a jury of two counts of distributing heroin in violation of 21 U.S.C. § 841(a). The conviction was affirmed on appeal. *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). At trial, the government's evidence consisted primarily of the testimony of a government informant, Beverly Johnson, and of two officers of the Drug Enforcement Agency, Special Agent John O'Connor and Special Agent Richard Freichels. Johnson testified that on November 11th and 12th, 1973, McMillan delivered heroin to her at her apartment in Minneapolis. Her testimony was corroborated by Agents Freichels and O'Connor, who testified that they observed McMillan entering and leaving Johnson's apartment building on the dates and at the times testified to by Johnson and that on each occasion, after McMillan's departure, they entered Johnson's apartment and recovered the heroin she testified he delivered. Johnson's testimony was further corroborated by tape recordings of telephone conversations between Johnson and a man identifying himself as "Harold" arranging for the deliveries. The defense offered no evidence at trial.

McMillan filed the present section 2255 motion on November 2, 1977.[2] The only claim before the court on this appeal is that his trial counsel was ineffective because he failed to interview and to call at trial two witnesses who could have discredited the eyewitness testimony of Agent O'Connor. The district court ordered an evidentiary hearing on the issue.

At the hearing, Harold McMillan testified that he provided his trial counsel, Donald S. Eisenberg, with a list of prospective witnesses, including his brother, Danny McMillan, and his nephew, Benjamin Banks. Danny McMillan and Banks both testified that they were never interviewed by Eisen-

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota.

2. The motion raised several arguments relating to the admissibility of the tape recordings at trial. In an order dated June 20, 1978, the district court ruled that these issues had been decided adversely to McMillan on his direct criminal appeal, *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), and in a previous motion under section 2255, *McMillan v. United States*, 558 F.2d 877 (8th Cir. 1977), and denied relief on these claims. McMillan has not reasserted these claims on this appeal.

berg. Eisenberg testified that he could not recall whether he interviewed the witnesses in question. Danny McMillan did not appear at all familiar to him. However, he recalled speaking with two black males, one of whom may have been Banks, at the courthouse, but determined that because of their prior records and their appearances, they would not be credible witnesses and their testimony would not aid the defendant's case.

In substance, the testimony which allegedly would have discredited Agent O'Connor was that on November 25, 1973, the day petitioner was arrested, O'Connor was unable to identify him and confused him first with Danny McMillan and later with Banks. Danny McMillan testified that O'Connor was one of several officers who stopped his vehicle and asked if he was Harold McMillan. Even after he denied it and produced identification, O'Connor persisted in inquiring whether he was really Harold McMillan with Danny McMillan's identification. Banks testified that he was with Harold McMillan at the time of his arrest and that after stopping their vehicle Agent O'Connor's first question was, "Which of you guys is Harold McMillan?"

Agent O'Connor testified at the hearing that he was not among the agents who detained Danny McMillan's vehicle. He further testified that Harold McMillan was identified to him by Beverly Johnson, that he had seen a police photo of him, that in the course of the investigation he had observed him on more than six occasions, and that there was no question in his mind concerning the identity of Harold McMillan at the time of his arrest. Agent Bloch, who assisted in the arrest, corroborated O'Connor's version of the circumstances surrounding the detention of Danny McMillan and the arrest of petitioner.

Following the hearing, the district court entered an order denying the motion. In a well-reasoned but unpublished opinion the court concluded that, even assuming that counsel failed to interview the witnesses and that the omission was inconsistent with the conduct of a reasonably competent at-torney, McMillan failed to establish that his defense was prejudiced thereby. We agree.

In this circuit, the evaluation of a petition alleging ineffective assistance of counsel involves a two-step process. *Rinehart v. Brewer*, 561 F.2d 126 (8th Cir. 1977). The petitioner must first show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Second, the petitioner must demonstrate that he was materially prejudiced in the defense of his case by the actions or inactions of his counsel. *Nevels v. Parratt*, 596 F.2d 344 (8th Cir. 1979); *Morrow v. Parratt*, 574 F.2d 411 (8th Cir. 1978); *Rinehart v. Brewer, supra.*

With respect to the first step, our cases have held that under some circumstances a failure to interview prospective witnesses may be a breach of the duty to act as a reasonably competent attorney. *See, e. g., Morrow v. Parratt, supra* (failure to interview eyewitnesses); *Thomas v. Wyrick*, 535 F.2d 407 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976); and *McQueen v. Swenson*, 498 F.2d 207, 217 (8th Cir. 1974) (failure to interview any prosecution witnesses as a matter of policy). Nevertheless, we have recognized that "in particular cases, an attorney's professional judgment may lead him to decline to interview some or all of the government's witnesses and to rely on other sources of information. Such an exercise of professional judgment will be given the same deference as any other." *Thomas v. Wyrick, supra,* 535 F.2d at 413 n. 7.

In the present case, faced with conflicting testimony, the district court assumed, without deciding, that counsel failed to interview the witnesses and that this omission constituted a breach of duty. The court held, nevertheless, that McMillan failed to sustain his burden of showing the second step, prejudice to his defense.

In order to establish prejudice,

the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt.

*Reynolds v. Mabry*, 574 F.2d 978, 980 (8th Cir. 1978), *quoting from McQueen v. Swenson, supra* at 220. Carefully applying this formulation, the district court concluded that the testimony of Banks and Danny McMillan would not have been helpful to petitioner. Further, even assuming that it might have been of some marginal assistance, the court held the omission of the testimony was nonetheless harmless beyond a reasonable doubt in light of the substantial other evidence of petitioner's guilt.

The court reasoned that Banks' and McMillan's testimony, even if credited, did not necessarily cast doubt on O'Connor's ability to identify Harold McMillan. Rather, O'Connor's inquiries could reasonably be construed "to be nothing more than an attempt to ensure beyond any conceivable doubt the arrest of the right person and to confirm the identity of that individual." Moreover, O'Connor's testimony with respect to Harold McMillan's part in the drug transaction was merely cumulative to the testimony of the informant Johnson and Agent Freichels. Thus, even if the testimony might have created some doubt about O'Connor's ability to identify petitioner, Agent Freichels' testimony would have remained unchallenged.

We agree that McMillan failed to demonstrate he was prejudiced by counsel's failure to offer the testimony of Banks and Danny McMillan at trial. Had they testified at trial, Agent O'Connor would have contradicted their testimony as he did at the hearing. Even if credited, their testimony was in no way exculpatory, but at best had some marginal value in impeaching the testimony of a single witness. In view of the other evidence of McMillan's guilt, we agree that the omission of their testimony was harmless beyond a reasonable doubt. Accordingly, McMillan failed to establish he was deprived of effective assistance of counsel at trial, and the district court correctly denied his motion to vacate. The judgment is affirmed.